# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **05-00168-CR-W-FJG** |
| Brandon L. Walton, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation

Pending before the Court is Defendant Walton's *Motion To Suppress All Physical Evidence Seized From The Jointly Occupied Motel Room Of Defendant Walton And His Female Companion And To Suppress All Statements Obtained From Defendant Subsequent To The Search Of The Room With Suggestions In Support,* filed May 23, 2005 (Doc. #14). On July 19, 2005, the undersigned held an evidentiary hearing on the defendant's motion. Defendant Walton was present and was represented by his counsel, John R. Osgood. The government was represented by Assistant United States Attorney Paul S. Becker. At the evidentiary hearing, the government called Officer Kurt Wyckoff of the Independence, Missouri Police Department and Kerec Grigsby, Night Manager of the Red Roof, Inn, Independence, Missouri as witnesses. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Govt. #1. | Ruger 357 revolver; |
| Govt. #2. | Norinco assault rifle; |
| Govt. #3. | Red Roof Inn registration; |
| Def. #1. | Hotel room notice; |

| | |
|---|---|
| Def. #2. | Photocopy of excerpt of Missouri statute; |
| Def. #4. | Red Roof Inn computer record; |
| Def. #5 | Officer Wyckoff case narrative report; |
| Def. #7. | Police computer printout; |
| Def. #8. | Police computer printout; |
| Def. #9. | Subpoena duces tecum; |
| Def. #11. | Red Roof Inn phone logs; |
| Def. #12. | Red Roof Inn policy manual excerpts; |
| Def. #13. | Red Roof Inn policy manual excerpts; |
| Def. #14. | Red Roof Inn policy manual excerpts; and |
| Def. #16. | cassette recording of Reeves interview. |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

**PROPOSED FINDINGS OF FACT**

1. On March 4th, 2005, at approximately 4:25 a.m., Officer Wyckoff of the Independence Missouri Police Department was working the night shift when he was dispatched to the Red Roof Inn at 13712 East 42nd Terrace, Independence, Missouri on a disturbance call. (Tr. 5, 18, 20) The dispatcher informed him that a black male was outside the hotel causing a disturbance by yelling and knocking on the door of Room 131. (Tr. 3, 20) Officer Wyckoff arrived at the scene within 7 or 8 minutes of the dispatch. Officer Long also responded to the scene and arrived within a few minutes of Officer Wyckoff. (Tr. 6) As the officers approached Room 131, a woman standing in the doorway of Room 133 told the officers that a man had parked his vehicle in front of Room 131 and was playing his stereo very loudly and yelling outside the door to Room 131. (Tr. 7-8, 21)

2. The officers went to Room 131 and knocked on the door for about ten minutes. (Tr. 8, 23, 47) They received no response to their knocking and could not hear any sound coming from Room 131. As the officers knocked on the door to Room 131, the hotel night manager, Kerec Grigsby walked up to them. Grigsby told the officers that he had received complaints about noise relating to Room 131. When no one answered the officers' knocking, Grigsby told the officers that he wanted the occupants to leave and that he was going to get the pass key. (Tr. 8, 24, 47-48, 64-65)

3. A moment later, Grigsby returned with the pass key. (Tr. 8, 25)

2

The officer knocked again and identified themselves as police officers. (Tr. 8) Grigsby slid the key into the door and tried to open the door but was prevented from doing so by the chain lock on the inside of the door. (Tr 8, 37, 48, 70) A woman (later identified as Latisha Reeves) came to the door. (Tr. 9, 37, 48, 7-0) Officer Wyckoff identified himself as a member of the police department and told her that they had received a call about a disturbance. (Tr. 9, 38) Reeves closed the door, unhooked the chain and then re-opened the door to Room 131. (Tr. 9, 26, 38) The officers entered the hotel room. Officer Wyckoff asked if there was anyone else in the hotel room. Reeves replied, "No." (Tr. 9, 28, 49, 70-71) Officer Wyckoff looked around the room and saw a foot with a sock on it protruding from underneath the corner of one of the beds. (Tr. 10, 29, 50)

4. Officer Wyckoff lifted the mattress up from the bed frame and saw a black male (later identified as defendant Walton) lying on the floor. Officer Wyckoff told defendant Walton to get up but he did not move. Officer Wyckoff rolled defendant Walton onto his stomach, handcuffed him, helped him to his feet and sat him down on the other bed. (Tr. 11, 29) As Officer Wyckoff was handling defendant Walton, Officer Long stated that there was a gun in between the bed frame and the mattress that he had seen when Officer Wyckoff lifted the mattress from the bed frame. (Tr. 11, 29) Officer Wyckoff retrieved the gun, unloaded 6 rounds of ammunition from it and took it to his patrol car. (Tr. 11, 30)(Govt. Ex. #1) Officer Wyckoff also retrieved a plastic baggie containing marijuana that was lying next to the gun and put that in his patrol car as well. (Tr. 12, 30) At the time he retrieved the gun, Officer Wyckoff asked Reeves if it was her gun. She stated it was not. Officer Wyckoff did not ask defendant Walton about the gun. (Tr. 13, 35) After retrieving the first gun and marijuana, Officer Wyckoff checked underneath the other bed and found a loaded rifle wrapped in two dark-colored T-shirts lying underneath the bed. (Tr. 13, 31-32) (Govt. Ex. #2) Officer Wyckoff placed the rifle in his patrol car as well.

5. Back in Room 131, Officer Wyckoff asked the defendant his name. Defendant Walton replied that his name was Joseph Reddick. (Tr. 14, 39) Officer Wyckoff asked for identification and defendant Walton told him that there was a piece of paper in his pocket. Officer Wyckoff recovered the piece of paper from defendant Walton's pocket. A birth date of 4/27/80 and a social security number 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 were written on the piece of paper.

3

        Defendant Walton produced no other identifying information and was asked no other questions at the scene. (Tr. 15, 39)

6.     The officers then placed defendant Walton and Reeves under arrest for possession of marijuana and transported them to the police station. (Tr. 15, 33, 36) The officers later determined through a fingerprint identification that the person who identified himself as Joseph Reddick was, in fact, defendant Brandon Walton. (Tr. 15)

7.     When Reeves registered and checked into Room 131 of the Red Roof Inn, she paid with cash in advance and indicated that she would be the only occupant of the room. (Tr. 43-45, Govt. Ex. #3)

8.     Prior to the officers' arrival at the Red Roof Inn on March 4, 2005, the night manager, Grigsby had received a call from Room 133 complaining of a loud stereo and a man banging on the door of the adjacent room. (Tr. 45) Grigsby had also received a similar complaint from the room above Room 131 (Tr. 50-51) Grigsby walked outside of the lobby and saw a blue Monte Carlo with the music turned up. He asked the occupant (later identified as defendant Walton) to turn down the car stereo. Defendant Walton complied and Grigsby returned to inside the Red Roof Inn. (Tr. 46, 61) Shortly thereafter, Grigsby received another call indicating that defendant Walton had again begun to play music even louder than before. Grigsby then called the police and went outside to the parking lot. As Grigsby came out he saw defendant Walton enter Room 131. (Tr. 47, 62-63) Grigsby waited for the police to arrive and when the officers received no response to their knocking, Grigsby retrieved the pass key and opened the door to Room 131 (Tr. 47, 68-69)

### PROPOSED CONCLUSIONS OF LAW

In support of his motion to suppress the evidence seized from Room 131 and his statements made subsequent to the search of the room, defendant Walton contends that the Independence, Missouri police officers conducted an illegal search of Room 131 and interrogated him without the benefit of *Miranda* warnings. The Government counters that defendant Walton had no reasonable expectation of privacy in Room 131 and that the officers

4

did not "interrogate" him for purposes of *Miranda.*

Without question, individuals possess a privacy interest in their property that is protected by the Fourth Amendment. *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000). As protection for the citizen from unwarranted government intrusion, the Fourth Amendment generally requires law enforcement to obtain a search warrant based on probable cause before undertaking a search of private property. *See*, *e.g.*, *Shade v. City of Farmington, Minnesota*, 309 F.3d 1054, 1059 (8th Cir. 2000). Those privacy interests are particularly enhanced when a search of an individual's domicile or residence is at issue. *See*, *e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 748, 104 S.Ct. 2091, 2097 (1984) ("It is axiomatic that the physical entry of the house is the chief evil against which the wording of the Fourth Amendment is directed."). The constitutional protection against unreasonable searches and seizures of a home or an apartment apply with equal force to a person's privacy in a temporary dwelling place such as a motel room. *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997). However, when a defendant seeks to challenge a search and seizure occurring in the motel room of another, the defendant must "demonstrate that he personally has an expectation of privacy in the motel room, and that his expectation is reasonable." *Minnesota v. Carter* 525 U.S. 83, 87-88 (1998)

In the instant case, the record is devoid of any indication that defendant Walton was anything other than a visitor in Room 131 – and perhaps not a particularly welcome visitor at that. The room was registered to and paid for by Lathisha Reeves who indicated at the time of registration and payment that she would be staying for one night only and that she would be the only overnight occupant of the room. Moreover, the defendant's conduct precipitating the arrival of Officer Wyckoff – banging on the hotel room door and yelling loudly in the wee hours

of the morning – is not consistent with the behavior of a person having the right to occupancy of the motel room.   Accordingly, the Court finds that the evidence does not support the conclusion that defendant Walton had any reasonable expectation of privacy in Room 131.  That being the case, defendant Walton's Fourth Amendment challenge to the search of Room 131 must fail.

Defendant Walton also argues that the false statement as to his identity should be suppressed because the officers failed to inform him of his *Miranda* rights prior to questioning him regarding his identity.  However, Eighth Circuit case law is clear that "[r]equests for routine information such as name and address, which is necessary for basic identification purposes, is not interrogation for purposes of *Miranda*."  *United States v. Jones,* 266 F.3d 804, 812 (8th Cir. 2001).  The record before this Court indicates that Officer Wyckoff asked for nothing of defendant Walton other than his name and identification.  Therefore, *Miranda* warnings were not required and the defendant's statement need not be suppressed.

 Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Defendant Walton's *Motion To Suppress All Physical Evidence Seized From The Jointly Occupied Motel Room Of Defendant Walton And His Female Companion And To Suppress All Statements Obtained From Defendant Subsequent To The Search Of The Room With Suggestions In Support,* filed May 23, 2005  (Doc. #14).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same.  A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest

injustice.

                                           */s/ John T. Maughmer*
                                              **John T. Maughmer**
                                   **Chief United States Magistrate Judge**